UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PEDRO RODRIGUEZ,
                                                     Plaintiff,

       vs.                                                                           9:09-CV-1005
                                                                                     (TJM/ATB)
PEGUERO, Correctional Officer, *et al.*,
                                                    Defendants.
_____

PEDRO RODRIGUEZ, Plaintiff *pro se*
JUSTIN C. LEVIN, Asst. Attorney General for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for Report and Recommendation by Senior District Judge Thomas J. McAvoy, pursuant to 28 U.S.C. § 636 (b) and Local Rules N.D.N.Y. 72.3(c).

In this civil rights complaint, plaintiff alleges that defendant Peguero assaulted him and filed a false misbehavior report, and that Sergeant Hoy[1] failed to investigate an unrelated beating and failed to provide "safe" medical care. (Dkt. No. 1 at p.3). Plaintiff seeks substantial monetary relief. Presently before the court is defendants' motion to dismiss the action for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6). (Dkt. No. 21). For the following reasons, this court agrees with defendants and recommends dismissal of this action in its entirety.

---

[1] This defendant's name was misspelled in the caption of the complaint. The proper spelling of his name is "Hoy," and the court will use the proper spelling throughout this report.

## DISCUSSION

I. **Facts and Procedural History**

When plaintiff filed this complaint, he named five defendants. (Dkt. No. 1; Compl.). Plaintiff stated that Officer Paguero "did beat me up and call me racial slurs and wrote [sic] false misbehavior report." Plaintiff then stated that defendants Skip Hughes and Vernon Fonda failed to properly investigate plaintiff's complaints. (Compl. at 3). Plaintiff accused defendant Corrections Officer Porter of writing a false misbehavior report and giving "false testimony." *Id.* Finally, plaintiff claimed that Sergeant Hoy refused to investigate a beating by two "unknown" corrections officers and refused to provide "safe" medical treatment. *Id.* Plaintiff alleged that, at the time of the events giving rise to the complaint, plaintiff was incarcerated at Downstate Correctional Facility on November 17, 2007 and Great Meadow Correctional Facility on February 7, 2009. *Id.* at pp. 2, 4.

Plaintiff attached many documents to his complaint. (Dkt. Nos. 1-1, 1-2).[2] These documents include grievances dating from 2007, 2008, and 2009 that plaintiff alleged were not properly investigated and documents relating to various misbehavior reports. On November 4, 2009, Senior Judge McAvoy granted plaintiff's motion to proceed *in forma pauperis*, but dismissed the complaint without prejudice as to

---

[2] Plaintiff has not numbered any of the pages in the documents attached to his complaint. The court has filed plaintiff's submissions in three "documents." The first document is Dkt. No. 1, and it consists of the seven-page form-complaint. (Dkt. No. 1). The two attachments are Dkt. Nos. 1-1 and 1-2. Dkt. No. 1-1 consists of 28 pages of documents, and Dkt. No. 1-2 is 46 pages long. The court will cite to plaintiff's submissions as they have been paginated by the court's Case Management/ Electronic Case Filing (CM/ECF) system.

2

defendants Hughes and Fonda because plaintiff has no constitutional right to have his grievances, or any other complaints, investigated. (Dkt. No. 7 at 2-3). Senior Judge McAvoy dismissed the action without prejudice as against defendant Porter because plaintiff has no constitutional right to be free from being falsely accused in a misbehavior report. (Dkt. No. 7 at 3).

Two defendants remain. First, plaintiff alleges he was assaulted by defendant Peguero. The complaint itself contains no further elaboration of this claim. Plaintiff failed to include any date, time, or location for this alleged assault. In order to determine the facts of this claim, the court has examined a grievance dated November 20, 2007, attached to the complaint,[3] wherein plaintiff states that on November 18, 2007, at Downstate Correctional Facility, defendant Peguero handcuffed plaintiff, slammed him up against the wall, hurting plaintiff's chest, twisting his right arm and causing injury to his right shoulder. (Dkt. No. 1-2 at 6). Plaintiff was still incarcerated at Downstate at the time he filed this grievance. *Id.*

Defendant Peguero is also mentioned in this submission as having issued a misbehavior report on November 18, 2007. (Dkt. No. 1-2 at 3-13). The November 20, 2007 grievance states that Officer Peguero assaulted plaintiff after a disciplinary hearing. (Dkt. No. 1-2 at 6-17). In a grievance, dated December 26, 2007, plaintiff also claims that Officer Peguero assaulted him on November 18, 2007, but the description of the assault is different than in the November 20, 2007 grievance.

---

[3] The form complaint itself is extremely vague, but this court has attempted to determine the facts surrounding plaintiff's remaining claims by reading the documents that plaintiff has attached to the complaint, including grievances filed by plaintiff after the alleged incidents.

3

(*Compare* Dkt. No. 1-2 at 7 *with* 1-2 at 8). By the time plaintiff wrote the December 26, 2007 grievance, he was no longer incarcerated at Downstate Correctional Facility.[4] (Dkt. No. 1-2 at 8).

In a memorandum to plaintiff, dated December 10, 2008, former defendant Skip Hughes,[5] wrote that plaintiff's grievance, relating to a November 18, 2007 incident, was untimely and was not filed at the facility in which plaintiff was housed at the time he wrote the grievance. It appears that plaintiff attempted to file a grievance at Downstate on December 2, 2008, while he was incarcerated at Great Meadow, but that the grievance related to "some aspect of an incident, which occurred on 11/17/07 [at Downstate], obviously exceeding [the 45-day] time limit." (Dkt. No. 1-2 at 13). It is clear from the documents that defendant Peguero worked at Downstate Correctional Facility in November of 2007.

Plaintiff's second claim resulted from an incident on February 7, 2009, while plaintiff was incarcerated at Great Meadow. In a grievance dated February 15, 2009, plaintiff stated that he was ordered by an officer to get a new identification card because plaintiff's old card was lost. (Dkt. No. 1-1 at 2). Plaintiff stated that he was taken to the "I-D room," but that when he refused to sign a document relating to his identification card, he was thrown down a flight of stairs and punched in the face, apparently by an unknown officer or officers. (Dkt. No. 1-1 at 3). Plaintiff stated that,

---

[4] Plaintiff's address is listed as Green Haven Correctional Facility in his December 26, 2007 grievance. (Dkt. No. 1-2 at 8).

[5] Skip Hughes is the Inmate Grievance Program (IGP) Supervisor at Downstate Correctional Facility. (Dkt. No. 1-2 at 13).

4

as a result, his face was swollen, his left eye "split open," and he had lumps all over his neck. *Id.* Plaintiff alleges that defendant Hoy did not properly investigate the incident and did not take plaintiff to the hospital when Sergeant Hoy checked the unit with another officer.

In a letter to the Inspector General's Office, dated August 9, 2009, plaintiff related a slightly different description of the February 7 incident, stating that an officer ordered plaintiff to get a new identification card, but when plaintiff refused to sign a document that would allow money to be taken out of his account to pay for the card, the officer kicked plaintiff in the chest. *Id.* at 2. Plaintiff stated that he did not speak English and could not communicate with the officer. *Id.* Plaintiff claimed that a different officer escorted plaintiff back to his cell and started to beat plaintiff as they were going up stairs. *Id.* Plaintiff then claimed that other officers, who were near the control station, observed the beating, followed plaintiff to his cell, and beat him again. *Id.* Plaintiff claimed that, later, defendant Hoy checked the unit with the company officer, but plaintiff was never taken to the hospital. *Id.*

Neither the February 2009 grievance, nor the August 2009 letter mentions defendant Peguero as one of the officers who allegedly beat plaintiff in February of 2009. Defendant Peguero was clearly the officer involved in the November 18, 2007 incident. In a March 25, 2009 decision, the Central Office Review Committee[6] (CORC) affirmed the Superintendent's denial of plaintiff's grievance. (Dkt. No. 1-1 at

---

[6] The CORC is the highest level of administrative review for inmate grievances. N.Y. COMP. CODES R. & REGS., tit. 7 § 701.5(d).

5

5). In that decision, the CORC stated that "Officer P . . . has gone on record to deny the grievant's allegation of assault." *Id.* The CORC also stated that "Sergeant H . . [sic] states he was present when Officer P . . . escorted the grievant to his cell, nothing abnormal was noticed, and that the grievant raised no objections." *Id.*

Plaintiff alleges that the February 7, 2009 assault occurred at Great Meadow Correctional Facility. The CORC decision refers only to "Officer P," but no other corrections officers as being involved in plaintiff's allegations. It is unclear whether Officer P is defendant Peguero or whether the initial "P" is merely a coincidence because plaintiff states that the 2009 assault was carried out by "unknown" officers. Plaintiff clearly knew defendant Peguero from the alleged assault in 2007.[7] In any event, plaintiff does not appear to be attempting to sue defendant Peguero for the alleged February 7, 2009 incident, rather, plaintiff alleges that Sergeant Hoy failed to take plaintiff to the hospital and failed to conduct a proper investigation of the alleged assault incident. Thus, the court will consider defendant Peguero only with respect to the November 18, 2007 incident.

The rest of the documents attached to the complaint refer to other incidents, and the documents that refer to "false misbehavior reports" do not refer to either of the remaining defendants as the individual who wrote the misbehavior report that plaintiff

---

[7] Unfortunately, the confusion in this case is further increased because, although defendant Peguero was working at Downstate on November 18, 2007 (Dkt. No. 1-2 at 7) (November 20, 2007 letter to IGRC Office, complaining about defendant Peguero), apparently in 2009, defendant Peguero was working at Great Meadow Correctional Facility, where he was served with the complaint in this case. (Dkt. No. 17) (Acknowledgement of Service for defendant Peguero, addressed to defendant at Great Meadow). Downstate Correctional Facility is not in the Northern District of New York; however, venue in this is proper in this district under 28 U.S.C. § 1391(b)(1).

was challenging in the document. (*See* Dkt. No. 1-1 at 10-28) (most of these documents deal with a misbehavior report dated February 8, 2008, written by Corrections Officer Mathe and a hearing held by Lieutenant Byrne, together with documents related to an investigation of the matter requested by plaintiff).[8]

Plaintiff also includes documents relating to a misbehavior report, issued against him on November 5, 2008, charging him with destruction of state property and assault on an officer by throwing juice at him. (Dkt. No. 1-2 at 18-21, 25, 26, 40). On the same day, plaintiff was also charged with an "unhygienic act" relating to some water coming out of his cell and a clogged toilet. (Dkt. No. 1-2 at 24, 39).[9] Plaintiff's inmate account was charged for the broken property. (Dkt. No. 1-2 at 30). Neither of the current defendants was involved in any of these incidents, and the documents may possibly be related to plaintiff's dismissed claim that his grievances were not properly investigated.

## II.  **Motion to Dismiss**

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements

---

[8] One of the pages in this submission is a Disciplinary Hearing Summary from a misbehavior report dated May 25, 2008, written by Corrections Officer Gilfus and a hearing held by Lieutenant Head. (Dkt. No. 1-1 at 11).

[9] Although the misbehavior report is written in Spanish (Dkt. No. 1-2 at 24), plaintiff's grievance, relating to this incident was written in English (Dkt. No. 1-2 at 39).

of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995). The court must heed its particular obligation to treat *pro se* pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (citing *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989)). Finally, in the case of a motion to dismiss involving a *pro se* plaintiff, the court may look beyond the complaint to plaintiff's opposition papers. *See Locicero v. O'Connell*, 419 F. Supp. 2d 521, 525 (S.D.N.Y. 2006) (citation omitted).

### III.   Excessive Force

#### A.   Legal Standards

Inmates enjoy Eighth Amendment protection against the use of excessive force,

8

and may recover damages under 42 U.S.C. § 1983 for a violation of those rights. *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992). The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000). To sustain a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements. *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999).

In order to satisfy the objective element of the constitutional standard for excessive force, the defendant's conduct must be "'inconsistent with the contemporary standards of decency.'" *Whitely v. Albers*, 475 U.S. 312, 327 (1986) (citation omitted); *Hudson*, 503 U.S. at 9. "[T]he malicious use of force to cause harm constitute[s][an] Eighth Amendment violation per se[,]" regardless of the seriousness of the injuries. *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (citations omitted). Although an inmate need not prove significant injury to make out an excessive force claim, " '[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" *See Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999) (plaintiff need not prove "significant injury'); *Sims*, 230 F.3d at 22 (not every push or shove violates an inmate's constitutional rights) (citation omitted).

9

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." *Id*. at 21 (citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id*. (quoting *Hudson*, 503 U.S. at 7). In determining whether defendant acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: the extent of the injury and the mental state of the defendant; the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendant; and any efforts made by the defendant to temper the severity of a forceful response." *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003).

### B. Application

Plaintiff fails to meet the objective standard for stating an excessive force claim with respect to the November 18, 2007 incident. The plaintiff's form-complaint is completely conclusory, and he states that he suffered only "several cuts and bruises with no medical treatment." (Compl. at p.3, ¶¶ II(D), III). While the extent of plaintiff's injuries is not determinative, conclusory allegations are insufficient to state a constitutional claim. *See Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) (conclusory allegations are insufficient to state a claim for relief under section 1983).

In the mishmash of documents attached to plaintiff's complaint, there are two descriptions of the alleged November 18, 2007 incident. In a letter, dated November 20, 2007, plaintiff claims that defendant Peguero took plaintiff into a room,

handcuffed him, and slammed plaintiff against the wall "hurting" his chest and twisting his right arm in an "uplifting" motion, causing an injury to his right shoulder, chest, and left ear. (Dkt. No. 1-2 at 6). In another letter, written to the Inmate Grievance Review Office, dated December 26, 2007, plaintiff refers to an incident dated November 18, 2007, also purportedly involving defendant Peguero.[10] In this letter, plaintiff alleges that "an officer" picked plaintiff out of line, told him to "get on the wall," reached his hand "into [plaintiff's] buttocks, called him a "stupid Dominican," struck him in the left ear, and took him to the floor. (Dkt. No. 1-2 at 8). It is unclear whether these are two separate incidents or whether plaintiff has simply told two different stories about the same incident. The next document is the memorandum from former defendant Hughes, telling plaintiff that he was too late filing a grievance "challenging some aspect of an incident, which occurred 11/18/07." (Dkt. No. 1-2 at 13). It also appears that plaintiff was disciplined in relation to the November 18th incident. (Dkt. No. 1-2 at 17). In a letter to the Grievance Committee, dated December 19, 2007, plaintiff lists various misbehavior reports that were written against him, including the officer who wrote the report. *Id.* One of the misbehavior reports is listed as being written by defendant Peguero. *Id.*

Looking further into the documents attached to plaintiff's complaint, at worst, plaintiff claims that on November 18, 2007, defendant Peguero treated plaintiff roughly when he had plaintiff against the wall. Such uses of force have been held to

---

[10] The only reason that the court assumes that defendant Peguero was the officer involved is that his name is printed at the top and bottom of the letters. He is never mentioned in the body of the letter. (Dkt. No. 1-2 at 5, 6).

11

be *de minimis*. *See Santiago v. C.O. Campisi Shield No. 4592*, 91 F. Supp. 2d 665, 674-75 (S.D.N.Y. 2000) (citing *inter alia Boddie v. Schneider*, 105 F.3d 857, 861 (2d Cir. 1997) (bumping, grabbing, elbowing, and pushing plaintiff was *de minimis*); *Yearwood v. LoPiccolo*, 1998 WL 474073 at *7 (S.D.N.Y. Aug 10, 1998) (choking plaintiff, hitting his head with a pair of keys, and punching him in the lip was *de minimis*)).

As stated above, it is unclear whether there were two separate incidents on November 18, 2007, however, the incident described in plaintiff's December 26, 2007 letter alleges only that defendant Peguero reached into plaintiff's buttocks during a frisk and struck him on his left ear before he took plaintiff to the floor. Plaintiff alleges that this action was accompanied by verbal abuse, including racial slurs. Whether this is a second version of the events of November 18, 2007 or whether this was a separate incident, the actions alleged in each instance clearly were *de minimis*. In addition, verbal harassment, even threatening or racial in nature, may be inexcusable, but it does not rise to the level of a constitutional violation. *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986); *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 364-65 (N.D.N.Y. 2010). Thus, defendant Peguero's ethnic or racial statements did not rise to the level of a constitutional violation.

## IV.    False Misbehavior Report

Plaintiff also alleges that defendant Peguero filed a false misbehavior report against plaintiff. The law is well-settled that an inmate has no right to be free from false accusations or false misbehavior reports, unless they are made in retaliation for

the exercise of a constitutional right. *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997)(citing *Franco*, 854 F.2d at 588-90). There is no claim that the misbehavior reports were filed in retaliation for the exercise of any constitutional right. Thus, any claim that defendant Peguero filed a false misbehavior report against plaintiff should be dismissed.

## V.     Failure to Investigate

### A.     Legal Standards

Inmates do not enjoy a constitutional right to an investigation of any kind by government officials. *Bernstein v. New York*, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008)(citing *Nieves v. Gonzalez*, No. 05 Civ. 17, 2006 U.S. Dist. LEXIS 24302, *11-13 (W.D.N.Y. Mar. 2, 2006); *Longi v. County of Suffolk*, No. CV-02-5821, 2008 U.S. Dist. LEXIS 25468, *22-23 (E.D.N.Y. Mar. 27, 2008)). In order for a constitutional violation to have occurred, the investigation itself must have resulted in a deprivation of a constitutional right. *Faison v. Hash*, 03-CV-6475P, 2004 U.S. Dist. LEXIS 29151, *6 (W.D.N.Y. Apr. 23, 2004)(citing *Malloy v. City of New York*, 1996 U.S. Dist. LEXIS 16417, *6 (S.D.N.Y. Nov. 7, 1996)(holding that warden's alleged failure to investigate assault by correctional officer did not give rise to constitutional violation, where plaintiff failed to show that warden could have anticipated or had other direct involvement in the assault); *Gomez v. Whitney*, 757 F.2d 1005 (9th Cir. 1985)(a claim against a police department for failure to investigate is insufficient to state a civil rights claim without another recognized constitutional right being involved)).

### B. Application

In this case defendants Hughes and Fonda were dismissed by Judge McAvoy because the only allegations against these defendants were that they failed to properly investigate plaintiff's complaints. (Dkt. No. 7 at 2-3) (citing *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003)). To the extent that plaintiff claims that defendant Hoy failed to investigate the alleged beating by two unknown officers on February 7, 2009, this claim should be dismissed because plaintiff has no constitutional right to any investigation.

## VI. Medical Care

### A. Legal Standards

Deliberate indifference to a convicted prisoner's serious medical needs constitutes cruel and unusual punishment, in violation of the Eighth Amendment, as made applicable to the states through the Fourteenth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). There are two elements to the deliberate indifference standard. *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003). The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.*

The objective prong of the standard is satisfied "when (a) the prisoner was 'actually deprived of adequate medical care,' meaning prison officials acted unreasonably in response to an inmate health risk under the circumstances, and (b) 'the inadequacy in medical care is sufficiently serious.' *Bellotto v. County of Orange*,

248 Fed. Appx. 232, 236 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006)).  If the "unreasonable care" consists of a failure to provide any treatment, then the court examines whether the inmate's condition itself is "sufficiently serious."  *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003).  When a prisoner alleges "a temporary delay or interruption in the provision of otherwise adequate medical treatment," the court must focus on the seriousness of the particular risk of harm that resulted from the challenged delay or interruption, rather than the prisoner's underlying medical condition alone." *Id*. at 185.  The standard for determining when a deprivation or delay in a prisoner's medical need is sufficiently serious, contemplates a condition of urgency that may result in degeneration of the patient's condition or extreme pain.  *Bellotto v. County of Orange*, 248 Fed. Appx. at 236 (citing *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998) and *Smith v. Carpenter*, 316 F.3d at 187 (actual medical consequences are highly relevant)).

The subjective prong of the deliberate indifference test is satisfied when an official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).  A plaintiff is not required to show that a defendant acted or failed to act "for the very purpose of causing harm or with knowledge that harm will result," but must show that the official was aware of facts from which one could infer that "a substantial risk of serious harm" exists, and that the official drew that inference.  *Id*. at 835, 837.

A difference of opinion between a prisoner and prison officials regarding

15

medical treatment does not, as a matter of law, constitute deliberate indifference. *Chance v. Armstrong*, 143 F.3d at 703. Nor does the fact that an inmate feels that he did not get the level of medical attention he deserved, or that he might prefer an alternative treatment, support a constitutional claim. *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001) (citing *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir.1986)). Even negligence in diagnosing or treating an inmate's medical condition does not constitute deliberate indifference. *Farmer v. Brennan*, 511 U.S. at 835. Thus, any claims of medical malpractice, or disagreement with treatment are not actionable under Section 1983. *Ross v. Kelly*, 784 F. Supp. 35, 44-45 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (1992) (table).

   B.   **Application**

   The complaint vaguely asserts that defendant Hoy did not provide plaintiff "safe" medical treatment. (Compl. at p.3). In the August 9, 2009 letter plaintiff wrote to the Inspector General, attached to plaintiff's complaint, he seems to imply that, after the alleged February 7, 2009 assault, defendant Hoy checked the unit "cell by cell" with the company officer

> and looked at my cell but it was to see me because I was injured. . . . On February 15, 2009 - the [sic] Sergeant Hoy came to take me to the hospital. I did not go [sic]

(Dkt. No. 1-1 at 2). However, in the February 15, 2009 letter to the Grievance Office, plaintiff wrote that he needed to see "medical," and that on February 15, 2009, the Sergeant came to his cell, but did not take him to the hospital. (Dkt. No. 1-1 at 3). This letter is inconsistent with his subsequent statement that he refused to go to the

16

hospital on February 15, 2009. In the CORC response,[11] dated March 25, 2009, the CORC noted that "the grievant refused medical examinations on 2/15/09 and 2/16/09." (Dkt. No. 1-1 at 5). This statement is consistent with plaintiff's letter to the Inspector General, wherein he admits that he refused to go to medical department on February 15, 2009. In its decision, the CORC also noted that plaintiff was "uncooperative when evaluated by his primary care provider on 2/17/09." *Id.* Thus, plaintiff's own documents show that he was afforded the opportunity to go to the medical department on February 15 and 16, and was evaluated by his own primary care provider on the 17th. He was not denied proper or "safe" medical care. Plaintiff cannot refuse to be taken to the hospital and then complain that defendant Hoy failed to provide him medical care.[12] *See Jones v. Smith*, 748 F.2d 149, 151-52 (2d Cir. 1986) (plaintiff's history of declining treatment by prison doctors undermined his claim that they were deliberately indifferent in failing to treat his back issues).

Plaintiff could be alleging that his medical care was delayed from February 7 until February 15, 2009. Because plaintiff's injuries were not serious, the delay in giving him the opportunity to go to the medical department would not meet the objective test for a constitutional violation. The more minor the injuries, the less

---

[11] The court notes that the fact that there is a CORC response attached to plaintiff's complaint, shows that, contrary to plaintiff's assertions, his grievances were answered.

[12] It is also unclear from plaintiff's complaint whether he is stating that defendant Hoy did not see that plaintiff was injured when he passed by the cell on February 7, 2009 with the company officer. Plaintiff claims that these individuals were "checking the unit." (Compl. at 2). Plaintiff never states that he asked to go to the medical department, but was refused. Sergeant Hoy's presence on the unit appears to have been for routine purposes.

serious the risk presented by a delay in treatment. Then, on February 15th, plaintiff alleges that he refused to go to the medical department. Any further delay was plaintiff's own fault. This court, therefore, recommends that plaintiff's attempt at alleging a denial of proper medical care by defendant Hoy as the result of an alleged assault on February 7, 2009 be dismissed.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 21) be **GRANTED**, and the complaint **DISMISSED IN ITS ENTIRETY WITHOUT PREJUDICE.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: January 27, 2011

Hon. Andrew T. Baxter
U.S. Magistrate Judge